**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 06-cv-00619-LTB

PHILIP W. MYERS, a Colorado resident, and,
WYERS PRODUCTS GROUP, INC., a Colorado corporation,

      Plaintiff,

v.

MASTER LOCK COMPANY, a Delaware corporation,

      Defendant.

_____

**ORDER**
_____

      In this patent infringement case, Plaintiffs, Philip W. Wyers and Wyers Products Group,

Inc. (collectively "Wyers"), assert that Defendant, Master Lock Company ("Master Lock"),

infringed upon four of Plaintiffs' patents: U.S. Patent Nos. 6,055,832 (the "'832 patent");

6,672,115 (the "'115 patent"); 7,165,426 (the "'426 patent"); and 7,225,649 (the "'649 patent").

The '832 patent covers a barbell-shaped lock intended for locking a trailer hitch onto a motor

vehicle with a seal mounted within the locking end of the barbell that prevents the ingress of dirt

or other matter into the lock.  The '115 patent covers a similar lock with a removable sleeve on

the shank so as to allow the lock to be used to lock objects with various sized apertures.  The

'426 patent covers a method for providing a lock with a removable sleeve on the shank.  The

'649 patent covers a lock similar to that covered by the '832 patent, but with a sealing cover

attached to the outside of the locking head.

      The matter is now before me on Master Lock's Motion for Partial Summary Judgment of

Non-infringement and Invalidity and supporting Brief [**Docket ## 106, 115**], Wyers's Response

[**Docket # 142**], and Master Lock's Reply [**Docket # 156**]. Oral arguments would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I GRANT IN PART and DENY IN PART Master Lock's Motion for Partial Summary Judgment of Non-infringement and Invalidity [**Docket # 106**]. To the extent Master Lock's Reply [**Docket # 156**] seeks summary judgment of non-infringement of the '649 patent, Master Lock's motion is HELD IN ABEYANCE pending additional briefing.

## I. STANDARD OF REVIEW

Courts analyze patent challenges—including claims of infringement and invalidity—by applying a two-step process. *See Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999); *Reinshaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1247 (Fed. Cir. 1998). First, it is necessary to construe the asserted claims to determine their scope and meaning. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). I completed this step in my Order dated February 11, 2008 ("Markman Order") [**Docket # 103**]. In the second step, it is necessary to compare the construed claims to the challenged patent or allegedly infringing device. *See Markman*, 52 F.3d at 976. It is the second step that is the subject of this motion for summary judgment.

### A. Summary Judgment Generally

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper

if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

The non-moving party has the burden of showing there are specific issues of material fact to be determined. *Celotex*, *supra*, 477 U.S. at 322. It is not enough that the evidence be merely colorable; the burden is on the non-moving party to come forward with specific facts showing a genuine issue for trial. *Id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); Fed. R. Civ. P. 56(c).

## B. Summary Judgment: Infringement

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id.* Accordingly, in a patent case, summary judgment of non-infringement is appropriate only if no reasonable jury could find infringement. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). When the party alleging his patent has been infringed is able to show material facts in dispute as to each essential element of the alleged infringement by a

preponderance of the evidence, summary judgment is not appropriate. *AquaTex Indus., Inc. v. Technique Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007); *Warner-Lambert Co. v. Teva Pharm. USA, Inc*., 418 F.3d 1326, 1341 (Fed. Cir. 2005); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989). Wyers meets this burden if it sets forth evidence that—if believed by the ultimate factfinder—supports a finding that it was more likely than not that each limitation set forth in the patent claim was also found in the accused product or process exactly or by a substantial equivalent. *Warner-Lambert Co.*, 418 F.3d at 1341. If Master Lock puts forth undisputed evidence that even one claim limitation is missing from the accused product, however, summary judgment of non-infringement is appropriate. *Johnston*, 885 F.2d at 1578.

### C. Summary Judgment: Invalidity

In addition to its argument that the Wyers patents have not been infringed, Master Lock argues the Wyers patents are invalid. Specifically, Master Lock argues the '832 patent was anticipated by prior art and was obvious in light of prior art, and argues the patent application was submitted more than one year after the claimed invention was offered for sale; the '115 and '426 patents were obvious in light of prior art and the related patent applications were submitted more than one year after the claimed inventions were offered for sale; and the '649 patent was obvious in light of prior art and was invented by Master Lock before the date Wyers claimed the invention. Because of the presumption of validity afforded a patent, "a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006). "The burden is upon on the movant to

establish the absence of genuine issues of material fact and entitlement to judgment as a matter of law." *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000).

### 1. Anticipation

A patent claim is invalid as anticipated if the claimed invention was known or used by others before it was invented by the patentee. *Verve, LLC v. Crane Cams., Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002). A single reference must describe the claimed invention with sufficient precision and detail to establish that a person of ordinary skill in the field of the invention would have been aware of the invention's existence. *See Minn. Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1309 (Fed. Cir. 2002). Whether a claimed invention was sufficiently anticipated such that patent protection should be precluded is a question of fact. *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002).

### 2. Obviousness

Patent claims are invalid as obvious when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made by a person having ordinary skill in the art to which said subject matter pertains." *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1734 (2007); 35 U.S.C. § 103(a). A patent "composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l*, 127 S. Ct. at 1740–41. This is particularly the case when combining known elements together yields "unexpected and fruitful" results. *Id.* at 1740. When a patent, however, "'simply arranges old elements with each performing the same function it had been known to perform'

and yields no more than one would expect from such an arrangement, the combination is obvious."  *Id*. at 1739–40 (quoting *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 282 (1976)).

The Supreme Court in *KSR International* rejected the Federal Circuit's previous teaching-suggestion-motivation test in favor of "an expansive and flexible approach," holding: "In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls.  What matters is the objective reach of the claim.  If the claim extends to what is obvious, it is invalid under § 103."  *Id*. at 1739, 1741–42.  Therefore, a court should look at the "interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue."  *Id*. at 1740–41; *see also Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1336 (Fed. Cir. 2005) ("The legal conclusion, that a claim is obvious within § 103(a), depends on at least four underlying factual issues: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) evaluation of any relevant secondary considerations.").

To facilitate review, the factual findings underlying the obviousness analysis should be made explicit.  *KSR Int'l*, *supra*, 127 S.Ct. at 1741; *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1288 (Fed. Cir. 2002).  Mere "conclusory statements" are insufficient to support the legal conclusion of obviousness.  *KSR Int'l*, 127 S.Ct. at 1741 (*citing In re Kahn*, 441 F.3d

977, 988 (Fed. Cir. 2006)).  Instead, "there must be some articulated reasoning with some rational underpinning."  *Id.*

### 3.  On-sale date

Under 35 U.S.C. § 102(b), a patent is invalid if the invention recited was "on sale" more than one year before the patent application was filed.  *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 57 (1998).  Where the one-year anniversary following the date of invention falls on a Saturday, Sunday, or federal holiday, however, the application may be filed on the next business day and still be considered filed within one year.  *See Orion IP, LLC v. Mercedes-Benz USA, LLC*, 485 F. Supp. 2d 745, 746–47 (E.D. Tex. 2007) (citing *Ex parte Olah and Kuhn*, 131 U.S.P.Q. 41 (Pat. Off. Bd. App. 1961)).

In order for the "on sale" bar to apply, two fact-based tests must be met by clear and convincing evidence.  *See Pfaff*, *supra*, 525 U.S. at 67.  First, it must be shown that the invention was the subject of a "commercial"—as compared to a mere "experimental"—offer for sale more than one year before the application was filed.  *Id.*  A "commercial offer for sale" is made when the patent holder agrees to sell the invention to a buyer or when the patent holder contracts with a supplier for the manufacture of the invention.  *Special Devices, Inc. v. OEA, Inc.*, 270 F.3d 1353, 1355 (Fed. Cir. 2001).  A communication does not rise to the level of an "offer for sale" unless the communication would be considered an "offer" under traditional contract law principles as described in the Uniform Commercial Code.  *See Elan Corp., PLC v. Andrx Pharms., Inc.*, 366 F.3d 1336, 1341 (Fed. Cir. 2004); *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1048 (Fed. Cir. 2001).  Promotional activity not rising to the level of a contractual offer for sale, or "offers" that do not include "quantities, times of delivery, place of delivery, or

7

product specifications" do not trigger the "on sale" bar. *See Gemmy Indus. Corp. v. Chrisha Creations, Ltd.*, 452 F.3d 1353, 1360 (Fed. Cir. 2006) (citing RESTATEMENT (SECOND) OF CONTRACTS § 33 (1981)); *Linear Tech.*, *supra*, 275 F.3d at 1049.

Second, it must be shown that the invention was ready for patenting more than one year before the application was filed. *Pfaff*, *supra*, 525 U.S. at 67. Proof of readiness for patenting may be shown by proof that the invention had been reduced to practice or by proof that the inventor had reduced the invention to drawings or other descriptions that were sufficiently specific to enable a person skilled in the art to practice the invention. *Id*. at 67–68.

### 4. Prior invention

Under 35 U.S.C. § 102(g), an invention is not patentable by its proposed inventor if "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1331 (Fed. Cir. 2001). A challenger "has two ways to prove that it was the prior inventor: (1) it reduced its invention to practice first . . . or (2) it was the first party to conceive of the invention and then exercised reasonable diligence in reducing that invention to practice." *Id*. at 1332.

An inventor's—or challenger's—testimony, standing alone, is insufficient to prove conception; some form of corroboration must be shown. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993). Corroboration may be in the form of testimony from other persons, drawings or models with adequate time identification, or any other documentation that fixes the time of invention. *Id*. at 1194–95. "An evaluation of all pertinent evidence must be made so that a

sound determination of the credibility of the inventor's story may be reached." *Id*. at 1195

(citing *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985)).

## II. ANALYSIS

### A. The '832 Patent

Master Lock argues summary judgment is appropriate on the following issues: (1) whether Master Lock infringed on the '832 patent; (2) whether claims 17 and 18 of the '832 patent are invalid as anticipated and obvious; and (3) whether the '832 patent is invalid by operation of the "on sale" bar. Wyers now concedes—based upon the Markman rulings made by this Court in my February 10, 2008, Order [**Docket # 103**]—that Master Lock does not infringe the '832 patent. Summary judgment of non-infringement of the '832 patent is therefore proper. Accordingly, I only address Master Lock's second and third contentions.

*1. Whether claim 17 and claim 18 of the '832 patent are invalid as anticipated or obvious*

Claim 17 of the '832 patent describes—in relevant part—a barbell-shaped locking device comprising a locking head with an "o-ring" seal located within the end of the locking head receiving the shackle portion of the lock such that the seal makes contact with the shackle when the locking head is in the locked state. *See* Markman Order pp. 5–7. It is not disputed that U.S. Patent No. 5,664,445 ("Chang patent") comprises a similar lock, but with a seal located on the shackle portion of the lock. *See* Expert Report of Brian Costley ("Costley Report") pp. 20–32 [Docket # 107-24]. This is not the invention claimed in the '832 patent, however. Thus, the Chang patent does not render claim 17 anticipated. *See Minn. Mining and Mfg. Co.*, *supra*, 303 F.3d at 1309 ("A claim is anticipated if a single prior art reference contains each and every limitation either expressly or inherently.").

Master Lock claims a padlock manufactured by Sargent & Greenleaf as early as 1991 employs an o-ring mounted within the padlock housing. *See* Costley Report pp. 3–4. In support of this claim, Master Lock submitted—along with the Costley declaration—what it alleges to be internal documents from Sargent & Greenleaf purporting to show the sale of "Item 80-018" beginning in 1992 [**Docket # 162**]. Although potentially persuasive at trial, these documents form an insufficient foundation—for the purposes of this summary judgment motion—upon which this Court can find by clear and convincing evidence that claim 17 was anticipated.

Further, a reasonable jury could conclude that claim 17 was not anticipated by the Sargent & Greenleaf patent. The Sargent & Greenleaf lock is a standard padlock that comprises a u-shaped shackle, with one end of the shackle permanently affixed within the locking head and the other free end of the shackle notched such that it becomes fixed within the locking head when in the locked position. The Sargent & Greenleaf lock contains an o-ring within the locking head such that the o-ring engages with the shackle when the shackle is inserted into the locking head, thereby preventing the ingress of contaminants. While the use of an o-ring in the Sargent & Greenleaf lock is quite similar to the use of an o-ring described in claim 17 of the '832 patent, claim 17 of the '832 patent contains at least one genuinely arguable improvement in that the seal surface of the shackle member described in claim 17 is a distinct surface that only makes contact with the o-ring seal when the shackle member is fully inserted into the locking head. In the Sargent & Greenleaf patent, the entire length of the free end of the shackle is the same diameter such that contact with the seal is continuous while the shackle is slid into the locking head. Part of the improvement claimed by Wyers in claim 17 included reducing the risk of damage to the seal from rubbing against other objects. A reasonable jury could therefore conclude that

reducing the length of the portion of the shackle that actually makes contact with the seal was an improvement that was not anticipated in the Sargent & Greenleaf patent. Accordingly, summary judgment on this issue is inappropriate. *See SRAM Corp.*, *supra*, 465 F.3d at 1357.

Claim 18 of the '832 patent describes a locking device according to claim 17 including a shackle member that has a stop portion—composed of a knob of a diameter that is too large to pass through the borehole or other aperture of two locked-together objects—on one end and a latch portion on the other end that connects securely to the locking head when fastened thereto. *See* Markman Order pp. 5–6. Master Lock argues the Chang patent shows precisely the same configuration of the shackle member and therefore claim 18 is obvious. Master Lock's argument, however, ignores that claim 18 is a dependent claim of claim 17. When a claim in a patent explicitly incorporates a prior claim, the claim cannot be found to be obvious if the incorporated claim is non-obvious. *See Hartness Int'l, Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1108 (Fed. Cir. 1987) ("For the reasons stated below, the district court was correct in holding the independent claim 1 was nonobvious. *A fortiori*, dependent claim 3 was nonobvious (and novel) because it contained all the limitations of claim 1 plus a further limitation."); *In re Spada*, 911 F.2d 705, 707 (Fed. Cir. 1990). While Master Lock presents some evidence that the configuration of the shackle member described in claim 18 would be obvious, Master Lock fails to meet its summary judgment burden by presenting undisputed clear and convincing evidence that the seal configuration in claim 17 was obvious. Accordingly, summary judgment on this issue is also inappropriate. *See SRAM Corp.*, *supra*, 465 F.3d at 1357.

*2. Whether the '832 patent was "on sale" more than one year prior to the filing date*

Wyers filed the application that matured into the '832 patent on September 15, 1998, and claimed priority to a provisional application filed on September 16, 1997. Accordingly, the "on sale" bar would invalidate the '832 patent if the claims described therein were offered for sale on or before September 15, 1996. Master Lock argues Wyers requested a Taiwanese supplier begin manufacturing the '832 lock on May 30, 1996. On June 11, 1996, the supplier allegedly offered to ship five samples to Wyers, to be followed by three thousand units on July 10, 1996. The supplier also allegedly billed Wyers for the three thousand units by invoice included in the June 11, 1996, letter. Wyers responds that the lock referenced in the June 11, 1996, letter was an embodiment of the Chang lock in that it had a groove on the shackle member for purposes of retaining an o-ring.

Although Philip Wyers testified by deposition that he "didn't want [the o-ring] on the shackle" and he "always wanted it in the head," the May 30, 1996, letter clearly shows the groove placed on the shank in a manner similar to the Chang patent. *See May 30, 1996, letter to Jennifer Chen* [**Docket # 109**]. While a party cannot overcome summary judgment by simply contradicting an earlier sworn statement, here the May 30, 1996, letter provides some evidence supporting the contradiction. *See Gemmy Indus. Corp.*, *supra*, 452 F.3d at 1359. As I must construe all reasonable inferences in favor of Wyers as the non-movant, and the question is a close one, I cannot say that Master Lock has presented clear and convincing evidence that the May 30, 1996, letter describes the '832 patent. *See Liberty Lobby*, *supra*, 477 U.S. at 255; *Gemmy Indus. Corp.*, 452 F.3d at 1359. Resolution of the "on sale" issue will "depend on findings of material fact and include issues of credibility and weight," and thus "cannot be

decided adversely to the non-movant on summary judgment." *Gemmy Indus. Corp.*, 452 F.3d at 1359.

## B.  The '115 and '426 Patents

As the '115 and '426 patents cover essentially the same invention—a removable sleeve employed for purposes of adjusting the diameter of the linear portion of a shackle in a barbell-type lock—I examine the claims of these two patents together.  Master Lock argues summary judgment is appropriate on the following issues: (1) whether the claims covering the use of a removable sleeve are invalid as obvious; and (2) whether the claims covering the use of a removable sleeve are invalid by operation of the "on sale" bar.

### 1.  Whether the claims asserted in the '115 and '426 patents covering
### the use of a removable sleeve are invalid as obvious

Both the '115 and '426 patents describe a barbell-type trailer hitch pin lock with a removable sleeve on the shank that allows the lock to closely fit into varying size holes of a trailer hitch and trailer hitch receiver.  Master Lock claims it has used a removable sleeve on its 37D lock since the 1970s.  The 37D lock is a padlock that includes a sleeve that can be slid over the free end of the shackle in order to change its diameter.

Master Lock's motion focuses on the scope of the 37D lock and whether Wyers was aware of the 37D lock when he applied for the '115 and '426 patents.  As *KSR International* makes clear, however, "[t]he question is not whether the combination was obvious to the patentee but whether the combination was obvious to a person with ordinary skill in the art."  *See KRS Int'l*, *supra*, 127 S. Ct. at 1742.  The proper inquiry asks whether a person of ordinary skill would "have found it to have been obvious, from the references as a whole, to create the claimed

13

subject matter as a whole," or "improve similar devices in the same way." *See id.* at 1740; *Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 324 (Fed. Cir. 1985). Such a finding must be predicated upon a substantial factual basis. *In re Kahn*, *supra*, 441 F.3d at 986. Mere identification of the prior art of each element is insufficient. *Id.*

Wyers argues that one skilled in the art of barbell locks would not look to padlocks for solutions to problems with sleeve diameter. Unlike barbell locks, which are designed to closely fit a specific aperture, Wyers argues padlocks are designed to loosely fit into a wide variety of apertures. Wyers argues padlocks "are typically designed to fit within a hasp or other opening of any size as long as that opening is larger than the shank of the padlock. Tight tolerances are not required and, indeed, are not desired in padlock designs because it limits the number of applications for which a particular padlock can be used." *See* Response p. 31 [**Docket # 142**]. Padlocks are also not designed for use in tight quarters and—because a padlock shank engages at a fixed axis relative to the locking head—do not have latches that engage in a 360° radius. *Id.* p. 32. Taking these considerations together, Wyers argues "interchanging elements between a padlock and a barbell lock would not lead to a predictable outcome," and "one skilled in the art would not be motivated to do so." *Id.* pp. 32–33.

Wyers also argues secondary considerations indicate non-obviousness. *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966) ("Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."). Specifically, Wyers notes that—prior to the '115 and '426 patents—receiver hitch locks were always sold in

individual shank diameter sizes and were never sold in variable diameter sizes. Although Master

Lock claims to have developed an adjustable-shank-diameter padlock in the 1970s, it did not

begin marketing an adjustable-shank-diameter barbell lock until after Wyers began marketing

the locks covered by the '115 and '426 patents. Other competitors have also since incorporated

adjustable diameter shanks into their barbell products.

Master Lock argues that Philip Wyers was never disclosed as an expert and the only

evidence of Wyers's claims regarding the obviousness of the adjustable-diameter-shank barbell

lock is Philip Wyers's own declaration. Addressing Master Lock's first contention, I note that

"[a] summary judgment affidavit may not contain expert testimony unless the affiant has first

been designated as an expert witness under FED. R. CIV. P. 26(a)(2)." *Bryant v. Farmers Ins.

Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). A summary judgment affidavit may, however,

include the opinions of lay witnesses under FED. R. CIV. P. 701. *Id*. at 1124.

Rule 701 allows Wyers's declaration here to the extent such declaration concerns Philip

Wyers's personal knowledge of his own locks and the business of Wyers Products Group, Inc.

*See* FED. R. CIV. P. advisory committee notes (2000 amendments) ("For example, most courts

have permitted the owner or officer of a business to testify to the value or projected profits of the

business, without the necessity of qualifying the witness as an accountant, appraiser, or similar

expert. Such opinion testimony is admitted not because of experience, training or specialized

knowledge within the realm of an expert, but because of the particularized knowledge that the

witness has by virtue of his or her position in the business. . . . Such testimony is not based on

specialized knowledge within the scope of Rule 702, but rather is based upon a layperson's

personal knowledge."); *see also Eckelkamp v. Beste*, 315 F.3d 863, 872 (8th Cir. 2002) (citing

*Burlington N. R.R. Co. v. Nebraska*, 802 F.2d 994, 1004 (8th Cir. 1986) ("personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience" provide proper foundation for lay testimony)). While Philip Wyers does improperly opine on whether one skilled in the art of lock making would have found his improvements to be obvious, his declaration primarily addresses his personal experience and knowledge as a manufacturer of trailer barbell locks, and notes with precision certain factors that distinguish his barbell locks from padlocks. Wyers also makes statements—supported by additional exhibits—regarding his own experience in the barbell lock market, particularly as it relates to sales of adjustable-diameter-shank locks when compared to single-diameter-shank locks.

Master Lock next argues Wyers's declarations—if they are admissible at all—are unsupported and conclusory and therefore do not create a material factual issue for trial. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004); *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002). I am unconvinced. Philip Wyers's statements in his declaration [**Docket # 143-2**] are not simply conclusory statements as to the ultimate issue of whether the '115 and '426 patent claims relating to adjustable diameter shanks are obvious. *See, e.g., Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) ("Dr. Helgert did not support his assertion that 'Jnet is a TST switch' with an explanation of why JNET's structure renders it a TST switch in his view; i.e., there is nothing in his declaration that would allow a finder of fact to conclude that JNET constitutes a TST switch as that term is used in the patent."); *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999) ("The district court properly characterized this statement as conclusory due to the expert's

assertion without any further explanation that '[b]ecause there is literal infringement, there is infringement under the doctrine of equivalents.'").  Philip Wyers notes how certain specific factors impact the performance of barbell locks and padlocks in differing ways.  Wyers also notes the different and specific requirements of each type of lock and how developments that improve one lock may not necessarily improve the other.  More important, Wyers provides non-opinion testimony—supported by exhibits—regarding market conditions and other secondary indications of non-obviousness.

Philip Wyers's declaration is no more conclusory than that of Master Lock's expert, Mr. Costley.  Mr. Costley states that "as any person of ordinary skill in the locksmithing trade would deduce, the sleeve's primary purpose is to provide for openings of two different sizes," Costley declaration, Ex. B p. 2 [**Docket # 107-25**], and if "one of skill in lock making were making a barbell or straight shackle lock, one would of course look to the teachings of padlocks," Costley declaration, Ex. A p. 8 [**Docket # 107-24**].  "Just as taking a seal from a padlock to a barbell lock is non-inventive and trivial, so would using a sleeve on a different shank."  Costley declaration, Ex. A p. 6 [**Docket # 107-24**].

At the summary judgment stage, generalized statements regarding the obviousness of a particular claim are insufficient to meet the challenger's heavy burden of proving invalidity.  *See Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002).  "The risk is great that the confusion or generality is the result, not of an inarticulate witness or complex subject matter, but of a witness who is unable to provide the essential testimony."  *Id*.  Mr. Costley's statements are nothing but bare assertions at this point.  While Costley's statements may be supported by testimony or additional evidence at trial, *see id.*, they are insufficient to establish

obviousness by clear and convincing evidence at this stage in this litigation.  For purposes of this summary judgment motion, therefore, Master Lock's evidence—even excluding any inadmissible expert opinions expressed by Phillip Wyers regarding the obviousness of his inventions—forms an insufficient basis upon which to find Master Lock meets its burden of showing invalidity by clear and convincing evidence.  Accordingly, I find material issues of fact exist as to whether the adjustable diameter shank describe in the '115 and '426 patents was obvious.

Wyers also argues the '115 and '426 patents are distinguishable from the 37D—as a padlock—because the 37D does not have a removable head, does not have a sleeve that closely fits with the shank, and does not have a sleeve that extends over a majority of the length of the shank.  As the obviousness of these claims was never raised by Master Lock, summary judgment is likewise inappropriate.

> 2.  *Whether the claims asserted in the '115 and '426 patents covering the use of a removable sleeve are invalid by operation of the "on sale" bar*

Wyers filed the application that matured into the '115 and '426 patents on April 24, 2000.  Accordingly, the "on sale" bar would invalidate the '115 and '426 patents if the claims described therein were offered for sale on April 23, 1999, or earlier.  Master Lock presents a letter [**Docket # 112**] from Wyers to an automotive buyer for a large chain of stores, dated April 23, 1999, stating: "It was a pleasure talking with you last week regarding the new **Convertible**, '***One Size Fits All***', locking hitch pin my company manufactures.  This exciting new product eliminates the need for the retailer to stock two pins . . . thus saving valuable retail space."

Accompanying the letter were two pages of drawings showing a barbell lock with a removable stainless steel sleeve for "quick conversion of 5/8" pin to 1/2" pin."

This letter is insufficient to show for purposes of summary judgment that the claims asserted in the '115 and '426 patent are invalid due to the "on sale" bar. A letter describing a sales conversation does not constitute a "commercial offer for sale." Even if the letter described an "offer"—which it does not—the letter makes no mention of "quantities, times of delivery, place of delivery, or product specifications." *See Gemmy Indus. Corp.*, *supra*, 452 F.3d at 1360 (citing RESTATEMENT (SECOND) OF CONTRACTS § 33 (1981)); *Linear Tech.*, *supra*, 275 F.3d at 1049. Accordingly, summary judgment of invalidity due to the one year "on-sale" bar is inappropriate. *See Gemmy Indus. Corp.*, 452 F.3d at 1358–59.

## C. The '649 Patent

The '649 patent, like the '832 patent, involves a barbell lock with a sealed locking head and incorporates the '832 patent by reference. The '649 patent differs, however, in that the seal on the '649 patent is located external to the locking head. Wyers has not identified how Master Lock allegedly infringes the '649 patent. Master Lock argues summary judgment is appropriate on the following issues: (1) whether the claims of the '649 patent are invalid as obvious; and (2) whether the claims of the '649 patent are invalid because Master Lock previously invented an external seal.

### 1. Whether the claims of the '649 patent are invalid as obvious

Master Lock argues a person of ordinary skill in the art of lock making, knowing of the '832 patent, would have considered it obvious to move the seal from inside the locking head to outside the locking head. Master Lock also argues a person of ordinary skill in the art of lock

making would have considered Master Lock's own 6121 lock and found the seal structure described by the '649 patent to be obvious. The 6121 lock comprises a padlock with an external seal that appears similar to the external seal on the '649 patent, but with a flange portion of the seal extending along the shank of the shackle.

The '649 patent describes a device wherein the sealing flange—which is depicted as a flat flange or as a flat flange notched to accommodate an o-ring—"is so shaped as to create a seal with the shackle member when the shackle member is inserted into the locking head." *See* Markman Order p. 12 [**Docket # 103**]. The sealing structure on the '649 patent is transverse to the axis of the shackle and does not extend up the shank of the shackle. Wyers argues that the use of a flat flange is not obvious in light of the use to which the flat flange is put—namely, a close-fitting barbell lock. Wyers argues a sealing flange that extends up the shank of the shackle would be prone to damage in a close-fitting barbell lock because the portion of the flange extending over the shackle would be subject to shearing forces if it was located within the aperture holes when engaged in a locked position or subject to crushing forces if it was located external to the aperture holes.

The difference between the '649 flange and the prior art is slight indeed. Even Philip Wyers testified in his deposition that the components of the '649 seal were "readily available" and that "we already have the components and stuff." [**Docket # 108**]. For purposes of summary judgment, however, the burden is on Master Lock to provide clear and convincing evidence that one skilled in the art of lock making would have found the use of a flat flange to be obvious. This showing must be unequivocal, and cannot rest on broad conclusory statements about what the prior art suggests. *See Innogenetics, N.V., v. Abbott Labs.*, 512 F.3d 1363, 1373

(Fed. Cir. 2008). Although the Costley declaration contains some reference to the obviousness of adapting padlock seals to barbell locks, the Costley declaration provides only conclusory and unsupported statements regarding whether it would have been obvious to one skilled in the art of lock making to use a flat flange instead of a flange that extends up the shank of the shackle. Nowhere does Mr. Costley "state how or why a person ordinarily skilled in the art would have found the claims of the ['649] patent obvious in light of some combination of those particular references." *See id.* This is insufficient to meet the burden of showing obviousness by clear and convincing evidence. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004) (holding that corroboration of an affidavit is required before finding invalidity based on the statements in the affidavit). Accordingly, summary judgment of invalidity due to obviousness is inappropriate.

### 2. *Whether the claims of the '649 patent are invalid because Master Lock previously invented an external seal*

Wyers filed the '649 patent application on February 7, 2003. Thus, there is a rebuttable presumption that the invention date is also February 7, 2003. *See Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000). Drawings submitted with the February 7, 2003, application, however, are dated "1-03." [**Docket # 107-15**]. Thus, the invention date could be as early as January 1, 2003, according to these drawings. Master Lock, on the other hand, claims to have invented the seal structure described in the '649 patent on July 22, 2002. In support of this contention, Master Lock submits a drawing of the 6121 seal—adapted for use in a barbell lock—on an internal memo dated July 22, 2002. [**Docket # 107-29**]. Master Lock

argues, therefore, that the '649 patent is invalid due to Master Lock's prior invention. *See* 35 U.S.C. § 102(g).

But for Master Lock to claim priority of invention, the July 22, 2002, drawings must include every feature or limitation of the claimed invention. *See Kridl v. McCormick*, 105 F.3d 1446, 1449–50 (Fed. Cir. 1997). The July 22, 2002, drawings—while they show both a direct seal and a seal notched to accommodate an o-ring—do not depict the flat flange seal described in the '649 patent. Instead, the drawings show a seal that extends outward from the receiving end of the locking head and makes contact with the shackle along the length of the shackle member. Reasonable juries could find that a seal with such easily-discernable differences does not include "every feature or limitation of the claimed invention." Accordingly, summary judgment as to prior invention is not appropriate.

### III. MASTER LOCK'S MOTION FOR SUMMARY JUDGMENT AS TO INFRINGEMENT OF THE '649 PATENT

In its Reply Brief in Support of its Motion for Summary Judgment of Non-infringement and Invalidity [**Docket # 156**], Master Lock moves for the first time for summary judgment of non-infringement of the '649 patent. Wyers shall have ten days from the date of this Order to file its response. Master Lock shall have ten days from the filing of Wyers's response to file its reply.

### IV. CONCLUSION

Accordingly, Master Lock's Motion for Partial Summary Judgment of Non-infringement and Invalidity [**Docket # 106**] is GRANTED IN PART and DENIED IN PART as follows:

1.      Summary judgment of non-infringement of the '832 patent is GRANTED;

2.      Summary judgment as to all other claims and counterclaims raised in Master Lock's Motion for Partial Summary Judgment of Non-infringement and Invalidity [**Docket # 106**] is DENIED.

To the extent Master Lock's Reply [**Docket # 156**] seeks summary judgment of non-infringement of the '649 patent, Master Lock's motion is HELD IN ABEYANCE pending additional briefing.

Wyers shall have ten days from the date of this Order to file its response to Master Lock's Motion for Summary Judgment of Non-infringement of the '649 Patent incorporated into its Reply Brief in Support of its Motion for Summary Judgment of Non-infringement and Invalidity [**Docket # 156**].  Master Lock shall have ten days from the filing of Wyers's response to file its reply.


Dated: May __22__, 2008.

                                        BY THE COURT:


                                        ___s/Lewis T. Babcock_____
                                        Lewis T. Babcock, Judge