**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 06-cv-00619-LTB

PHILIP W. WYERS, a Colorado resident, and,
WYERS PRODUCTS GROUP, INC., a Colorado corporation,

    Plaintiff,

v.

MASTER LOCK COMPANY, a Delaware corporation,

    Defendant.
_____

**ORDER**
_____

In this patent infringement case, Plaintiffs, Philip W. Wyers and Wyers Products Group, Inc. (collectively "Wyers"), assert that Defendant, Master Lock Company ("Master Lock"), infringed upon four of Plaintiffs' patents: U.S. Patent Nos. 6,055,832 (the "'832 patent"); 6,672,115 (the "'115 patent"); 7,165,426 (the "'426 patent"); and 7,225,649 (the "'649 patent"). The '832 patent covers a barbell-shaped lock intended for locking a trailer hitch onto a motor vehicle, with a seal mounted within the locking end of the barbell that prevents the ingress of dirt or other matter into the lock. The '115 patent covers a similar lock with a removable sleeve on the shank so as to allow the lock to be used to lock together objects with various sized apertures. The '426 patent covers a method for providing a lock with a removable sleeve on the shank. The '649 patent covers a lock similar to that covered by the '832 patent, but with a sealing cover affixed to the outside of the locking head.

On February 11, 2008, I issued an initial *Markman* Order construing disputed terms in all four patents [**Docket # 103**]. On May 22, 2008, I issued an Order [**Docket # 168**] granting

Master Lock's motion for summary judgment of non-infringement of the '832 patent; denying Master Lock's motion for summary judgment of invalidity on all four patents; and holding in abeyance Master Lock's motion for summary judgment of non-infringement of the '649 patent pending additional briefing. The parties filed additional briefing on the '649 patent that raised new issues of claim interpretation not addressed in my February 11, 2008, *Markman* Order. I issued a second *Markman* Order construing the remaining disputed terms in the '649 patent on July 29, 2008 [**Docket # 176**]. Also in my July 29, 2008, Order, I denied Master Lock's motion for summary judgment of non-infringement of the '649 patent without prejudice.

The matter is now before me on Master Lock's Renewed Motion for Partial Summary Judgment of Non-infringement of the '649 Patent and supporting Brief [**Docket ## 178, 179**], Wyers's Response [**Docket # 189**], and Master Lock's Reply [**Docket # 192**]. Oral argument would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I DENY Master Lock's Renewed Motion for Partial Summary Judgment of Non-infringement of the '649 Patent [**Docket # 178**].

## I. STANDARD OF REVIEW

Courts analyze patent challenges—including claims of infringement and invalidity—by applying a two-step process. *See Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999); *Reinshaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1247 (Fed. Cir. 1998). First, it is necessary to construe the asserted claims to determine their scope and meaning. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). I completed this step—as it regards the '649 patent—in my July 29, 2008, Order ("second *Markman* Order") [**Docket # 176**]. In the second step, it is necessary to compare the construed

2

claims to the challenged patent or allegedly infringing device. *See Markman*, 52 F.3d at 976. It is the second step that is the subject of this motion for summary judgment.

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

The non-moving party has the burden of showing there are specific issues of material fact to be determined. *Celotex*, *supra*, 477 U.S. at 322. It is not enough that the evidence be merely colorable; the burden is on the non-moving party to come forward with specific facts showing a genuine issue for trial. *Id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing

3

what evidence would enable the jury to find for either the plaintiff or the defendant." *Id*. Accordingly, in a patent case, summary judgment of non-infringement is appropriate only if no reasonable jury could find infringement. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). When the party alleging his patent has been infringed is able to show material facts in dispute as to each essential element of the alleged infringement by a preponderance of the evidence, summary judgment of non-infringement is not appropriate. *AquaTex Indus., Inc. v. Technique Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007); *Warner-Lambert Co. v. Teva Pharm. USA, Inc*., 418 F.3d 1326, 1341 (Fed. Cir. 2005); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989). Wyers meets this burden if it sets forth evidence that—if believed by the ultimate factfinder—supports a finding that it was more likely than not that each limitation set forth in the patent claim was also found in the accused product or process exactly or by a substantial equivalent. *See Warner-Lambert Co.*, 418 F.3d at 1341. If Master Lock puts forth undisputed evidence that even one claim limitation is missing from the accused product, however, summary judgment of non-infringement is appropriate. *See Johnston*, 885 F.2d at 1578.

## II. ANALYSIS

In the second *Markman* Order, I defined the disputed terms of the '649 patent. For purposes of context, I briefly describe the relevant terms here—noting that the construction uttered in the second *Markman* Order controls. The '649 patent comprises a barbell-shaped lock with two separable portions described as a "shackle member" and a "locking head." The shackle member is the part of the lock that is inserted into the apertures of two objects for purposes of locking them together. One end of the shackle member consists of a "stop portion" that prevents

4

the shackle member from passing through the apertures. The other end of the shackle member consists of a "latch portion" that is notched so that the locking head will securely attach to the shackle member. Between the latch portion and the stop portion lies the "shank portion." When the shackle member is inserted into the locking head, the seal on the locking head makes contact with the shank portion in an area designated the "outer surface margin."

The locking head includes an outer cover—called a "casing"—that has one end enclosed by an end cap—called a "transverse inner head face." The transverse inner head face contains an opening—called an "entryway"—that is geometrically similar to, but slightly larger than, the latch portion of the shackle member such that the opening and the latch portion can be fitted together. The locking head also has a "head cover" that includes a "cover portion" that makes contact with the sidewall of the casing and a flexible and resilient "flange portion." The flange portion extends inward from the cover portion on the end of the locking head that receives the shackle member and is shaped such that the flange portion forms a seal with the outer surface margin when the locking head is attached. The seal structure is transverse to the axis of the shackle and does not extend up the shank of the shackle when the locking head and shackle member are engaged.

Master Lock submits that no genuine issue of material fact exists whether their accused lock lacks at least four claim limitations of the '649 patent as interpreted in the second *Markman* Order: (1) a transverse inner head face; (2) an entryway in the transverse inner head face sized and adapted to mate with the latch portion; (3) a seal structure that sealably engages the outer surface margin of the shank; and (4) a seal structure that does not extend up the shank of the shackle. I address each claim limitation in turn.

A. A Transverse Inner Head Face

In the second *Markman* Order, the term "transverse inner head face" was defined as an "end cap" that enclosed the end of the casing that receives the shackle member. Master Lock describes its casing as being merely a tube with an open end that "simply stops" and has "no material or structure which encloses the end of the tube." Wyers's schematic drawing—which Master Lock does not dispute to be an accurate depiction—shows Master Lock's device does not consists of a simple tube, however, but instead shows that the tube is, in fact, enclosed to some degree by a ring of material extending inwardly from the interior of the sidewall of the casing.

When considering the present motion for summary judgment of non-infringement, I must construe all facts and inferences in the light most favorable to Wyers as the non-movant. *See Bus. Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1371–72 (Fed. Cir. 2005). As noted in the second *Markman* Order, an "end cap" is commonly defined in this context as "a fitting for closing the end of a tube." To "enclose" means "to surround on all sides." A reasonable jury could conclude that the Master Lock casing—which is partially closed on the end that receives the shackle member—is enclosed by an end cap as so defined. Accordingly, summary judgment in Master Lock's favor is inappropriate on this claim limitation. *See U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374–75 (Fed. Cir. 2007).

### B. An Entryway in the Transverse Inner Head Face Sized and Adapted to Mate with the Latch Portion

As held above, a material question of fact exists whether Master Lock's locking head includes a transverse inner head face. Accordingly—as I must construe all factual inferences in favor of Wyers as the non-movant—I must assume the existence of a transverse inner head face for purposes of this summary judgment motion. *See Bus. Objects, S.A., supra*, 393 F.3d at 1371–72.

Each claim of the '649 patent requires that the transverse inner head face have "an entryway sized and adapted to mate with said latch portion." In the second *Markman* Order, this phrase was defined to mean "an opening in the inner head face that is geometrically similar to, but slightly larger than, the latch portion such that the opening and the latch portion can be fitted together."

As defined in the second *Markman* Order, the "latch portion" includes any portion of the shackle member that is inserted in or through the entryway in the transverse inner head face when the locking head is attached. Master Lock now argues this definition of "latch portion" is too broad because it would "never exclude any device." *See Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945, 950–51 (Fed. Cir. 2006). Although I note Master Lock did not raise this argument at the claim construction stage, the argument is unconvincing in any regard. While it is accurate to state that "whatever goes into the entryway becomes the latch portion," the "entryway" covered by the '649 patent is limited to an opening that is "geometrically similar to, but slightly larger than, the latch portion." Applying this definition, it is clear that an opening in the transverse inner head face that is either geometrically dissimilar to the latch portion—or that is

more than slightly larger than the latch portion—would not comprise an "entryway sized and adapted to mate with said latch portion." Accordingly, the Federal Circuit's concern expressed in *Bicon* does not encompass the claims at issue here.

It cannot be disputed that the (assumed) transverse inner head face has a generally circular-shaped opening. Likewise, it cannot be disputed that the portion of the shackle member that is positioned within the opening when the locking head is attached to the shackle member is also of a generally circular shape, but is of a slightly smaller diameter. A reasonable jury could therefore conclude—once a transverse inner head face is found—that the entryway in the transverse inner head face is sized and adapted to mate with the latch portion of the shackle member. Accordingly, summary judgment in Master Lock's favor is also inappropriate on this claim limitation.

### C. A Seal Structure that Sealably Engages the Outer Surface Margin of the Shank

In the second *Markman* Order, "an outer surface margin adjacent to said latch portion" was construed to mean "that part of the shackle member that sealably engages with the head cover when the shackle member is inserted into the locking head and that is located immediately between the latch portion and the remainder of the shackle member." Master Lock claims the seal for its lock does not engage the outer surface margin, but rather engages the shank "well beyond the surface immediately next to the latch portion."

Master Lock's argument on this limitation—much like its argument in Part B, *supra*—misconstrues the definition of the term "latch portion." As defined in the second *Markman* Order, the "latch portion" includes any portion of the shackle member that is inserted into or through the entryway in the transverse inner head face when the locking head is attached.

8

Also as noted in the second *Markman* Order, the portion of the shackle member that comprises the "outer surface margin" is defined by the area "that sealably engages with the head cover when the shackle member is inserted into the locking head." Thus, the outer surface margin is that portion of the shackle member located immediately between the latch portion and the remainder of the shackle member.

A review of Wyers's schematic drawings—which Master Lock again does not dispute to be an accurate depiction—shows Master Lock's device includes a head cover that creates a seal structure with the shackle member when the shackle member is inserted into the locking head. Like the '649 patent, the portion of the shackle member that engages with the head cover appears to be located immediately between the latch portion and the remaining shank portion. A reasonable jury could conclude, therefore, that the Master Lock shackle member includes a portion that "sealably engages with the head cover when the shackle member is inserted into the locking head and that is located immediately between the latch portion and the remainder of the shackle member." Accordingly, summary judgment in Master Lock's favor is inappropriate on this claim limitation as well.

### D. A Seal Structure that Does not Extend up the Shank of the Shackle

Master Lock claims: "In Master Lock's accused product, the seal does extend up the shank." As noted in the May 22, 2008, Order [**Docket # 168**] in this case denying Master Lock's motion for summary judgment of invalidity, the prior relevant art was distinguishable from the '649 patent because the prior art depicted a seal structure extending outward from the receiving end of the locking head and making contact with the shackle along the length of the shackle member; the '649 patent, on the other hand, depicted a flat sealing structure that was transverse

to the axis of the shackle and did not extend up the shank of the shackle. The requirement that the seal structure covered by the '649 patent be transverse to the axis of the shackle and not extend up the shank of the shackle was incorporated into the definition of the phrase "flexible, resilient flange portion extending inwardly from said cover portion to define an opening having a surrounding flange edge that defines a seal structure" in the second *Markman* Order.

A schematic comparison of the sealing structures of the accused device and the '649 patent shows the sealing structures to be virtually indistinguishable. Accordingly, a reasonable jury could conclude Master Lock's device infringes this claim limitation.

Master Lock, however, states the seal structure in its accused lock is modeled after the seal structure of the prior-art "6121 series" lock discussed—and distinguished—in the May 22, 2008, Order. Unfortunately for Master Lock, the relevant inquiry is not whether Master Lock's accused device could be found by a reasonable jury to infringe the 6121 series lock, but rather whether Master Lock's accused device could be found by a reasonable jury to infringe the '649 patent. Even if the seal structure of Master Lock's accused device is "modeled after" that of the 6121 series lock, I have previously found the difference between the 6121 series lock's seal and that of the '649 patent to be "slight indeed." *See* May 22, 2008, Order, p. 20 [**Docket # 168**]. This "slight difference" would be sufficient to raise a genuine issue of material fact on the infringement inquiry. *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1321 (Fed. Cir. 1998). Accordingly, summary judgment in Master Lock's favor is inappropriate on this claim limitation.

### III.  CONCLUSION

Master Lock's motion argues its accused device lacks four claim limitations found in the '649 patent: (1) a transverse inner head face; (2) an entryway in the transverse inner head face sized and adapted to mate with the latch portion; (3) a seal structure that sealably engages the outer surface margin of the shank; and (4) a seal structure that does not extend up the shank of the shackle.  A review of the evidence shows that a reasonable jury could conclude that each of these claim limitations could also be read on Master Lock's accused device either exactly or by a substantial equivalent.  *See Warner-Lambert Co.*, *supra*, 418 F.3d at 1341.  Accordingly, Master Lock's Renewed Motion for Partial Summary Judgment of Non-infringement of the '649 Patent [**Docket # 178**] is DENIED.


Dated: September   9  , 2008.

> BY THE COURT:
>
>   s/Lewis T. Babcock
> Lewis T. Babcock, Judge