**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 06-cv-00619-LTB-MJW

PHILIP W. WYERS, a Colorado resident, and
WYERS PRODUCTS GROUP, INC., a Colorado corporation,

        Plaintiffs,

v.

MASTER LOCK COMPANY, a Delaware Corporation,

        Defendant.

---

**PLAINTIFFS WYERS' TRIAL BRIEF**

---

**COME NOW** Philip W. Wyers and Wyers Products Group, Inc. ("Wyers"), by and through counsel, HENSLEY KIM & HOLZER, LLC, hereby file their *Trial Brief*:

## I. INTRODUCTORY STATEMENT

Defendant Master Lock's Barbell sleeved series of locks, embodied in the 1480 DAT for purposes of this trial, directly infringes patents 6,672,115 (the '115 Convertible Shank Patent) and 7,165,426 (the '426 Method Patent). Master Lock has pled the defense of inequitable conduct solely as it relates to the '426 patent. In particular, Master Lock claims that during the prosecution of the '426 patent, Wyers, materially and intentionally mislead the patent prosecutor. Plaintiffs submit that this defense, and all argument and evidence supporting it, should not be submitted to the jury for consideration in light of the status of the evidence, and in light of case law on inequitable conduct including a newly published opinion of the Federal Circuit (which was issued the day after the Final Pretrial Conference in this matter). *Line Rothman et. al. v.*

*Target Corp. et. al.*, Slip Opinion 2008-1375 (Fed. Cir. February 13, 2009).  *See* attached **Exhibit 1**.

Plaintiffs also ask that the Court limit certain testimony of witnesses as argued below.

## II. FACTS RELEVANT TO THE CLAIM FOR INEQUITABLE CONDUCT

In January 2004 Mr. Wyers, through his counsel Tim Martin, promptly put Master Lock on notice of the issuance of the '115 convertible shank patent and the ongoing direct infringement of that patent by Master Lock's Barbell series of locks.  On March 9, 2004, Master Lock responded to Wyers' cease and desist letter and claimed that the '115 Convertible Shank Patent was invalid.  *See* **Plaintiffs' Trial Exhibit 140**.  In support, Master Lock attached documents relating to the 37D padlock including two photographs of the 37D, a copy of the product insert, a claims chart prepared by its patent counsel and invoices showing sales of the 37D padlock since 1995.  On May 26, 2005, Mr. Martin sent a "Transmittal of Second Supplemental Information Disclosure" to the PTO and stated:

> Applicant wishes to bring the Examiner's attention to a padlock allegedly sold by Master Lock Company.  Master Lock alleges to Applicant that:
>
> (1)   This Armored Trailer Hitch Lock is sold under the item number 37DAT.
>
> (2)   A photograph, attached hereto as Exhibit 1, depicts this lock (the labeling on Figure 1 is not applicant's labeling but rather is Master Lock's interpretation);
>
> (3)   A photocopy is attached hereto as Exhibit 2 is the packaging insert card used with this lock as of the year 2000 (see the copyright notice);
>
> (4)   The lock has been sold at least as early as 1995.
>
> Applicant has no independent knowledge of these matters.

*See* **Plaintiffs' Trial Exhibit 6, pp. 66-70.**

Defendant Master Lock claims that Mr. Martin should also have disclosed Figure 2 and Tab D which was attached to Master Lock's March 9, 2004 letter. *See* **Plaintiffs' Trial Exhibit 140**. Defendant Master Lock has not, however, identified any evidence that would establish intent to deceive or that these items would have been material to the PTO's determination, as required by *Cargill Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359 1363 (Fed. Cir. 2007).

### III.  MASTER LOCK'S INEQUITABLE CONDUCT CLAIM FAILS UNDER *LINE ROTHMAN V. TARGET CORP*.

To prevail on an inequitable conduct charge, a defendant must present "evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO]." *Cargill Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359 at 1363; *Line Rothman v. Target Corp.*, Slip Op. 2008-1375, p. 18 (Fed. Cir. Feb. 13, 2009). Both of these factual elements require proof by clear and convincing evidence. *Id*.

Inequitable conduct may only be established when there is clear and convincing evidence of an intent to deceive, a standard that requires more than a mere showing that the material information was not disclosed. *Line Rothman*, at 19. Gross negligence, for instance, is not sufficient to show a deceptive intent. *Eisai Co. Ltd. V. Dr. Reddy's Labs, Ltd.*, 533 F.3d 1353, 1359-60 (Fed. Cir. 2008).

In *Line Rothman*, the patentee did not disclose two prior art references that the accused infringer alleged were relevant to the application and the validity of the application. *See, Line Rothman*, at 24. The Court found that these prior art references were not material due to the

3

number of other similar prior art references that were disclosed. *Id*. In this case, Mr. Martin <u>disclosed</u> the existence of the 37D, a picture of the 37D annotated by Master Lock, copies of the product insert which describes the 37D and the fact that Master Lock had sold the item since 1995.

More importantly, there is no evidence that Mr. Martin withheld information with an intent to deceive the PTO. The above quoted language from Mr. Martin's May 26, 2005 transmittal to the PTO clearly states that Master Lock considered the 37D prior art. The fact that Mr. Martin used the word "alleged" is neither inaccurate nor evidence of a deceptive intent. In addition, the Court in *Line Rothman* noted that letters received by an infringer do not create an automatic duty of disclosure, "[o]therwise, every potential patent licensee (and prospective infringer) could subject a patent applicant to the possibility of inequitable conduct sanctions on a whim." *See, Line Rothman*, at 27.

No reasonable juror could attribute a deceptive intent to the actions of Mr. Martin to disclose the 37D. In light of such a disclosure of the 37D, a "prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct." *Id.* at 30. Deceptive intent should not be gathered from "the routine back and forth between examiner and applicant." *Id*. The examiner has the discretion to reject or accept an applicant's arguments based upon the examiner's own conclusions regarding the prosecution record. *Id*.

Ultimately, there is insufficient evidence to submit inequitable conduct to the jury. In addition to the absence of competent evidence of a deceptive intent, the prosecution history indicates that the 37D was considered by the PTO on February 17, 2006, eleven months before the '426 Method Patent issued on January 23, 2007. *See* Plaintiffs' Trial Exhibits 6-32.

4

The evidence in this matter could not possibly support a finding, by clear and convincing evidence, that Mr. Wyers withheld material information with a deceptive intent. Unlike in *Line Rothman*, the art <u>was</u> disclosed. As no reasonable juror could find that there is clear and convincing evidence to support the claim for inequitable conduct, the claim should not be presented at the time of trial, by argument or instruction. Plaintiffs, therefore, request that the Court remove reference to inequitable conduct from its opening instructions to the jury and enter an order precluding the Defendant from arguing that the '426 Method Patent is subject to being barred for inequitable conduct. The Prejudicial effect of this argument in light of no evidence of wrongful intent or conduct far outpaces any relevance or value this argument will have.

## II. TESTIMONY OF WITNESSES

### A. *The Testimony of Brian Costley and Vincent Thomas Should be Limited to the Confines of their Respective Reports.*

Fed.R.Civ.P. 26(a)(2) requires the testimony of any expert witness to be fully disclosed at least 90 days before trial. Specifically, Rule 26(a)(2) states that disclosure of an expert shall include a report, and that this report shall include

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the data or other information considered by the witness in forming them; [and]
> (iii) any exhibits that will be used to summarize or support them....

*See also, Jacobsen v. Deseret Book Company,* 287 F.3d 936, 952 (10th Cir. 2002).

A party "is under a continuing duty to supplement the expert report if there are additions or changes to what has been previously disclosed." *Jacobsen,* 287 F.3d at 952. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at

trial, unless the failure was substantially justified or harmless." Fed.R.Civ.P. 37(c)(1). Therefore, Wyers intends to object to any testimony of Master Lock's expert witnesses Vincent Thomas or Brian Costely that was not previously disclosed in their respective reports.

### B.  *Paul Peot May Not Testify as an Expert Witness*

Paul Peot was Master Lock's 30(b)(6) corporate designee. According to Fed.R.Civ.P. 26(a)(2)(A), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence as an expert. The deadline to disclose expert witnesses expired months ago. Master Lock never designated Mr. Peot as an expert witness. Defendants have disclosed no report, have not disclosed Mr. Peot's opinions, documents relied on, or qualifications. Therefore, his testimony is limited to lay testimony, as outlined in Federal Rule of Evidence 701. Plaintiffs relied on this during discovery and trial preparation. Accordingly, Wyers intends to object to the testimony of Mr. Peot to the extent that it falls within the purview of Federal Rules of Evidence 702, 703, or 705.

### C.  *Under FRE 701, Phil Wyers May Testify to his Invention, the Background of his Invention, the Problem that Existed, His Solution, and Master Lock's Infringement of his Invention*

Mr. Wyers is the inventor of the patents in suit, including the '832 Patent, the '115 Patent, the '426 Patent, and the '649 Patent. Mr. Wyers has been in the lock industry for over 15 years and has particularized knowledge regarding the subject of barbell pin locks, in general, and the inventions articulated in his patents, in particular.

It is well established Federal Circuit law that:

> Patents are written not for laymen, but for and by persons experienced in the field of the invention. An inventor is a competent witness to explain the invention and what is intended to be conveyed by the specification and covered by the claims. The

6

> testimony of the inventor may also provide the background information, including an explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems.

*Voice Technologies Group, Inc. v. VMC Systems, Inc.,* 164 F.3d 605, 615 (Fed. Cir. 1999). Thus, an inventor can explain his technology and what was invented and claimed. *Union Pac. Res. Co. v. Chesapeake Energy Corp.,* 236 F.3d 684, 693 (Fed.Cir.2001).

Fed.R.Civ.P. 701 allows for lay witness testimony that is rationally based on the perception of the witness. Lay opinion testimony includes that which is based on a witness's specialized knowledge obtained in his or her vocation or avocation. *See, e.g., U.S. v. Sweeney,* 688 F.2d 1131, 1145 (7th Cir. 1982). An inventor's extensive personal experience in the art of his patent provides him with specialized knowledge to support his testimony about his patented invention as well as an accused infringer's product and how it works. *See, e.g., Braun Corp. v. Maxon Lift Corp.,* 282 F.Supp.2d 933, (N.D.Ind.Hammond.Div.2003).

Wyers may testify regarding his personal knowledge of his own locks and the business of Wyers Products Group. *See* Fed.R.Civ.P. 701 advisory committee notes (2000 amendments)(stating that a lay witness can testify as to particularized knowledge that the witness has by virtue of his or her position in a business); *Eckelkamp v. Beste,* 315 F.3d 863, 872 (8th Cir. 2002). Other courts have similarly held that an inventor may testify as to the invention and its contribution to the area of knowledge involved in the art. *See, e.g. Phillips v. AWH Corp.,* 415 F.3d 1303, 1317-1318 (Fed. Cir. 2005) (authorizing consideration of extrinsic evidence, "including expert and inventor testimony," for the purpose of "establish[ing] that a particular term in the patent or prior art has a particular meaning in the pertinent field.); *Caught Fish Enterprises, LLC, v. Contek,* 509 F.Supp.2d 954, 961 (D.Colo. 2007)(allowing an inventor to

testify regarding the meaning of patent terms); (*Baxter International Inc. v. Cobe Lab., Inc.* 794 F.Supp. 252, 254 (N.D. Ill 1991)(stating that an "inventor may very well be the person most qualified to testify as to the invention and as to its contribution to the area of knowledge involved in the art"); *Nelco Corp. v. Slater Electric, Inc.,* 80 F.R.D. 411, 415 (E.D.N.Y. 1978)(stating that "it can be said that the [inventor] clearly has had ample experience as an 'actor' upon which he can base interpretations of these claims."); *CellNet Data Systems, Inc. v. Itron, Inc.,* 178 F.R.D. 529, 533 (N.D. Cal. San Jose Div. 1998)(stating that the "inventors are competent to offer testimony on this [patent claim interpretation] subject").

Within the context of intellectual property litigation, courts have allowed lay witnesses to compare and contrast various products. *See, e.g. Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1374 (5th Cir. 1981). *Miller* involved a copyright infringement suit brought by an author of a book against the makers of a movie dealing with the same subject matter. In that case, the court properly allowed the plaintiff to testify as a lay witness regarding the similarities between his book and the defendants' movie. *Id.* The court found that Fed.R.Civ.P. 701 is designed to allow a lay witness to testify in a conclusory fashion, and that, under these circumstances, the plaintiff "was in a unique position of being intimately familiar with the allegedly infringed work." *Id.*

## IV.  '115 AND '426 PATENT ON-SALE BAR

*A.  Master Lock Cannot Meet its Burden of Proof Regarding the On-Sale Bar by Clear and Convincing Evidence.*

Plaintiffs intend to object to any reference to the on-sale bar relative to the '115 and '426 Patents. The only evidentiary support Master Lock has produced to support this argument is an

April 23, 1999 letter from Wyers to Brad Logan, a buyer for Wal-Mart. **[Doc. No. 112]** This letter states that "It was a pleasure talking to you last week regarding the new **Convertible, *'One Size Fits All'*,** locking hitch pin my company manufactures. This exciting new product eliminates the need for the retailer to stock two pins ... thus saving valuable retail space." As this Court found in its May 22, 2008 Order, p. 19 **[Doc. No. 168]**, a "letter describing a sales conversation does not constitute a 'commercial offer for sale.' Even if the letter described an 'offer' – which it does not – the letter makes no mention of 'quantities, times of delivery, place of delivery, or product specification.'" Therefore, without an offer of proof of more substantial evidence, it is inappropriate for Defendants to make reference to the on-sale bar with respect to the '115 Patent and the '426 Patent.

### B. *Master Lock Cannot Meet its Burden to Prove Obviousness by Clear and Convincing Evidence.*

Master Lock claims that the '115 and '426 Patents should be invalidated as obvious in light of the 37D padlock and a prior barbell lock invention. Master Lock's evidence provides an insufficient basis for a finding of invalidity by clear and convincing evidence. To support this argument, Master Lock has offered the testimony of its expert Brian Costley. As this Court concluded, Mr. Costley made only bare assertions in his report. *See* Expert Report of Costley; *see also* May 22, 2008 Order, p. 17 **[Doc. No. 168]**. These statements are insufficient to establish obviousness by clear and convincing evidence. *Id.* at 17-18. This testimony forms an insufficient basis upon which Master Lock can meet its burden of showing invalidity by clear and convincing evidence. It does not appear that Master Lock has any further documents or witnesses to support this argument. Unless Master Lock can make an offer of proof

9

substantiating its arguments, Wyers intends to object to any mention of obviousness with respect to the '115 and '426 Patents at trial.

Respectfully submitted this 23rd day of February, 2009.

                                    *s/Aaron P. Bradford*
                                    Aaron P. Bradford
                                    Michael P. Dulin
                                    HENSLEY KIM & HOLZER, LLC
                                    1660 Lincoln St., Suite 3000
                                    Denver, CO  80264
                                    Ph: 720-377-0770
                                    Fax:  720-377-0777
                                    ATTORNEYS FOR PLAINTIFFS
                                    PHILIP W. WYERS AND WYERS PRODUCTS
                                    GROUP, INC.

**CERTIFICATE OF SERVICE**

I certify that on this 23rd day of February, 2009, a true and correct copy of PLAINTIFFS **WYERS' TRIAL BRIEF** was served via ECF and addressed to the following:

Jonathan H. Margolies
Katherine W. Schill
Michael Best & Friedrich, LLP
100 E. Wisconsin Ave., Ste. 3300
Milwaukee, WI 53202
*Attorney for Defendant*

Christopher P. Beall
Levin Sullivan Koch & Schulz, L.L.P.
1888 Sherman St., Ste. 370
Denver, CO 80203
*Attorney for Defendant*

                                    *s/Aaron P. Bradford*