UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **1:06-cv-00619-LTB-MJW**

PHILIP W. WYERS, a Colorado resident, and
WYERS PRODUCTS GROUP, INC., a Colorado corporation,

    Plaintiffs,

v.

MASTER LOCK COMPANY, a Delaware corporation,

    Defendant.

___

### DEFENDANT'S MOTION TO PRECLUDE AN UNDISCLOSED AND SPECULATIVE REQUEST FOR ROYALTIES
___

Defendant and Counterclaimant Master Lock Company ("Master Lock"), by and through its attorneys Michael Best & Friedrich LLP and Levine Sullivan Koch & Schultz, L.L.P., respectfully moves the Court for an order precluding Plaintiffs Philip W. Wyers and Wyers Products Group, Inc. (together, "Wyers") from arguing to the jury or offering any testimony suggesting that a reasonable royalty in this case is anything other than what the prior testimony has indicated, and in particular, that they be barred from seeking a royalty based on a calculation that was disclosed for the very first to Master Lock's counsel on the Friday night before trial.[1]

---

[1] Pursuant to D.C. Colo. L. Civ. R. 7.1, undersigned counsel certifies that the motion herein is not one for which a meet-and-confer consultation with opposing counsel would be meaningful. As detailed in this Motion, counsel for the parties have exchanged email correspondence concerning their respective positions concerning the calculation of a reasonable royalty in this case. Further consultation will not avoid the need for a judicial determination of this matter.

{00194089;v1}

### *<u>INTRODUCTION</u>*

Following the Court's Order on February 24, 2009 directing that Wyers would be barred from seeking lost profits as a form of damages in this case, (Doc. #258, entered Feb. 24, 2009), counsel for Master Lock requested in an email to Wyers' counsel that Wyers provide a specific calculation of the reasonable royalty that Wyers would now seek at trial.  Previously, Wyers had never disclosed a specific calculation of a reasonably royalty.  Instead, all that Wyers had ever offered in connection with a potential royalty was the testimony of Wyers' corporate designee and president Philip Wyers, with respect to Mr. Wyers' view that $1.10, as half of Wyers' then-proposed lost profits figure of $2.20, would be "more than generous."  (*See* Wyers' Rule 30(b)(6) dep., at 237.)

On Friday evening, February 27, 2009, with just two days before the start of trial, Wyers' counsel provided an email response to Master Lock's request.  In that response, despite having been told by this Court, in no uncertain terms, that damages in this case will be governed by procedural fairness and the substantive law, Plaintiffs now calculate their royalty to be equal to 33% of gross sales for the sleeve, which is 50% of Master Lock's profits, and 30% of gross sales for the seal, which is another 50% of Master Lock's profits.  In other words, Wyers is now claiming that it is entitled to a 63-66% royalty, or 100% of Master Lock's profits.  (*See* E-mail of Michael Dulin, Feb. 27, 2009, at 6:09 p.m., attached hereto as **Exhibit A.**)

A royalty of this nature is unsupported and contradicts the law as embodied in the stipulated jury instruction on this topic, which requires that a reasonable royalty be one which "a prudent licensee . . . would have been willing to pay as a royalty yet be able to make a reasonable profit."  *See* Jury Instruction No. 32.  Moreover, Wyers' newly disclosed royalty request

contradicts the history between the parties, who negotiated a much lower royalty on the features of the patents-in-suit.

Wyers' new royalty request suffers from the same procedural and substantive defects of their lost profits gambit. It contradicts the Rule 30(b)(6) position expressed by Mr. Wyers that $1.10 a unit would be "more than generous." And, the newly proposed royalty figure is based on speculation, conjecture and a desire to lead the jury to error. Wyers have failed to perform any analysis under the *Georgia-Pacific* factors, as required by the Federal Circuit and that is the basis of the stipulated jury instruction. Federal Circuit law is clear that a reasonable royalty must be based on evidence, not "conjecture." *Unisplay, S.A. v. American Electronic Sign Co.,* 69 F.3d 512, 517 (Fed. Cir. 1995) ("Although this analysis necessarily involves an element of approximation and uncertainty, a trier of fact must have some factual basis for a determination of a reasonable royalty. Any rate determined by the trier of fact must be supported by relevant evidence in the record.").

## *ARGUMENT*

**I.  Procedural History.**

This Court is now well aware of the procedural history of damages discovery in this case. During that discovery phase, Mr. Wyers testified that a reasonable royalty at half of his alleged $2.20 lost profits claim would be "more than generous." (Wyers dep., at 237.) Today, however, Wyers' counsel have revealed an intention to seek a royalty of approximately $6.60 a unit, ***three times higher*** than what Mr. Wyers alleged were his lost profits, and ***six times higher*** than a figure he testified was "more than generous." This simply is not fair.

**II.     Wyers' Testimony Shows No Analysis.**

In addition, even Mr. Wyers' own testimony on the Plaintiffs' claim of a $1.10 royalty showed that his calculation was not based on any of the analysis required under the *Georgia-Pacific* factors, but instead was nothing more than rank speculation:

> Q. Okay. What work have you done since your deposition to analyze damages in this case?
> A. Well, I mean, I just calculated -- took our history as far as when we started selling the Master Lock, took that number of what we -- what our costs were, what they paid for it, and kind of extrapolated that as a damage number or a royalty.
>
> ***
>
> Q. (BY MR. MARGOLIES)  Okay.  Is the damage claim you're asserting in this case, $2.20 a unit, based on your dealings with Master Lock in 1999 and 2000?
> A. Well, I guess we would -- I mean, I guess as far as what we were doing at the time, I mean, it seemed to be what they were paying.  I don't know how you would look at that from a royalty – I mean, I guess I would reduce that slightly if it was a royalty, because we're not in the middle of it.  ***You know, maybe it would be, I think, more than generous if you cut it in half.***
>
> ***
>
> Q. Okay.  That $2.30?
> A. Right, $2.20.
> Q. Okay.
>
> * * *
>
> Q. Have you done any calculation of what a reasonable patent royalty would be for just the sleeve feature alone?
> A. I would just have to guess.  You know, I would say similar to what the O-ring would be, whatever we came up with there. I mean, I think it's a feature that would be in line with what that would be.  I mean, I guess any kind of royalty-type situation.
> Q. Well, what -- what have you calculated would be a reasonable royalty for an O-ring?
> A. Well, I'm just going back to what -- I mean, I guess half of the -- whatever the percentage is of, say, half of $2.20.

{00194089;v1}                                          4

Q. But again, that's for an OEM?
A. Right. That's -- $2.20, and then you'd say -- if they just, you know, license the concept and just -- if we don't have to do anything, I would say half of that or something.
Q. But would it be a double -- I mean, would they pay half of the OEM for O-ring and half of the OEM for sleeve, or would you just OEM your F32 product?
A. I don't know. You might -- if they incorporated both, you might look at some kind of blend of the two, yeah. I mean, I think it would be something like that. I mean, off the cuff.
Q. And when you say "off the cuff," what is the analysis you've done, if any, to determine that these would be reasonable royalties for the sleeve feature and the O-ring feature?
A. I guess, truthfully, I would rather not sell anybody the sleeve, you know. I would rather not do a license agreement and control that.

* * *

A. You know, I would -- so it's going to be a higher number, because it's something I see as a very advantageous item. So I would probably opt to – who says you've got to license anybody, you know, kind of thing. So it would be – given my preference, I would rather not license somebody.
Q. *Have you done any analysis as to what* a -- let's say you were going to license it –
A. Right.
Q. *– what a company like Master Lock or Reese would find the value of the sleeve is in terms of a license?*
A. *No, I haven't done any.*
Q. How would you go about doing that?
A. I guess you would just have to negotiate it; or offer it to Reese, offer it to Master, and see who is willing to pay what; or not license anybody type of thing.
Q. *Well, for instance, if you took $1.10 a unit, do you think a Reese or Master Lock would pay $1.10 for the ability to use a sleeve?*
A. *I wouldn't have any idea.*

***

Q. Okay. So if, for instance, someone were selling to Wal-Mart at a 25 percent profit margin, do you have any view of what they would pay as a patent royalty for a feature, let's say a seal?

{00194089;v1}                                    5

> A. No, I wouldn't.
> Q. Okay.
> A. Wouldn't know.

(Wyers dep., at 197, lines 18 to 24; at 199, lines 5 to 14, at 230, lines 12 to 14; at 235, line 18 to 236, line 24; at 237, lines 1 to 22; and, at 242, lines 11 to 17) (all emphasis is added).[2]

### III. Master Lock Has The Only Competent Evidence In The Record Concerning A Legally Reasonable Royalty.

Master Lock has previously submitted to the Court, under seal, the Expert Report of Vincent Thomas. Mr. Thomas, a recognized damages expert who has provided testimony in almost twenty cases, conducted a reasonable royalty analysis under the *Georgia-Pacific* factors, *see Georgia Pacific v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120-21 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971). The *Georgia-Pacific* factors are recognized as the proper standard by the Federal Circuit. and are stipulated to by the parties for the Jury Instructions. Mr. Thomas' calculation of a reasonably royalty is thus the ***only*** evidence in the record that conducts a royalty analysis under the legally required analytical framework, and it is therefore the only competent evidence that should be presented to the jury. Any testimony, argument, or request that seeks to establish a reasonable royalty other than on the basis of Mr. Thomas' calculation would confuse the jury and invite it to render a decision on the basis of unlawful considerations.

---

[2] To the extent Plaintiffs complain that Mr. Wyers was "unprepared" for his deposition, that assertion is belied by Plaintiffs' reliance on him as a Rule 701 witness. To the extent Mr. Wyers is going to be allowed to give any opinion testimony whatsoever, Plaintiffs may only do so if Mr. Wyers' testimony is "rationally based on the perception of the witness." *See* Fed. R. Evid. 701(a). One does not "prepare" for testifying as to those perceptions. One knows them, or not.

**IV. Requested Relief.**

Because Wyers have failed to offer any reasonable analysis of a royalty, and because they have consistently changed their position to maximize the number they wish to dangle in front of the jury, Master Lock requests that this Court limit the royalty request here to the only competent evidence in the record, that is, Mr. Thomas' expert report's analysis supporting a 2.5% royalty. Such a finding as a matter of law is dictated by procedural fairness, as well as the substantive law. Mr. Thomas' analysis is simply the only competent evidence on royalties in this case.[3]

This approach is supported by the Federal Circuit. In *Dow Chemical Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003), the court held that "[t]he district court's conclusion that no damages could be awarded, in light of the presumption of damages when infringement is proven, was in error. But, the district court's obligation to award some amount of damages does not mean that a patentee who puts on little or no satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount awarded by the court is not 'reasonable' and therefore contravenes Section 284."

In the alternative, Master Lock asks that Wyers' royalty request be limited to the $1.10 that Mr. Wyers disclosed as his request in the Rule 30(b)(6) deposition he gave as the corporate designee of Wyers Products Group, and that Mr. Wyers' testimony on this topic at trial be limited to the non-speculative facts in the record.

---

[3] In addition, a ruling that declares a 2.5% royalty to be reasonable as a matter of law with respect to the accused products at issue here would have an added benefit for the Court and the parties. Master Lock anticipates that the trial would be shortened by almost half if damages were removed from consideration. Master Lock believes that it could put on its entire invalidity and non-infringement case in approximately five to six hours of testimony.

**WHEREFORE**, the Court should enter an order prohibiting Wyers from presenting argument or testimony suggesting that a reasonable royalty in this case is anything other than what the record supports, either because it finds that a royalty of 2.5% is reasonable as a matter of law, or because Wyers are bound by their judicial admission that a royalty of $1.10 per unit is reasonable.

Respectfully submitted this   1st   day of March, 2009,

                By:   */s Christopher P. Beall*
                Jonathan H. Margolies
                Katherine W. Schill
                MICHAEL BEST & FRIEDRICH LLP
                100 East Wisconsin Avenue, Suite 3300
                Milwaukee, WI  53202-4108
                Telephone:     414.271.6560
                Facsimile:     414.277.0656

                Christopher P. Beall
                LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
                1888 Sherman Street, Suite 370
                Denver, CO  80203
                Telephone:     303.376.2400

                Attorneys for Defendant-Counterclaimant
                **Master Lock Company**

## CERTIFICATE OF SERVICE

I hereby certify that on this  1st  day of March, 2009, I electronically filed the foregoing **DEFENDANT'S MOTION TO PRECLUDE AN UNDISCLOSED AND SPECULATIVE REQUEST FOR ROYALTIES**   with the Clerk of the Court using the ECF/CM electronic filing system, which will send an electronic copy of this filing to the following counsel of record:

Aaron P. Bradford, Esq.
Michael Patrick Dulin, Esq.
William T. Slamkowski, Esq.
Thomas J. Osborne Jr., Esq.
HENSLEY KIM & HOLZER, LLC
1660 Lincoln St., Suite 3000
Denver, CO 80264
*Attorneys for Plaintiffs*


  */s Christopher P. Beall*