**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 06-cv-00619-LTB

PHILIP W. WYERS, a Colorado resident, and,
WYERS PRODUCTS GROUP, INC., a Colorado corporation,

      Plaintiffs,

v.

MASTER LOCK COMPANY, a Delaware corporation,

      Defendant.
_____

**ORDER**
_____

      In this patent infringement case, Plaintiffs, Philip W. Wyers and Wyers Products Group, Inc. (collectively "Wyers"), asserted that Defendant, Master Lock Company ("Master Lock"), infringed upon four of Plaintiffs' patents: U.S. Patent Nos. 6,055,832 (the "'832 patent"); 6,672,115 (the "'115 patent"); 7,165,426 (the "'426 patent"); and 7,225,649 (the "'649 patent"). The '832 patent covers a barbell-shaped lock intended for locking a trailer hitch onto a motor vehicle, with a seal mounted within the locking end of the barbell that prevents the ingress of dirt or other matter into the locking mechanism. The '115 patent covers a similar lock with a removable sleeve on the shank so as to allow the lock to be used to lock together objects with various sized apertures. The '426 patent covers a method for providing a lock with a removable sleeve on the shank. The '649 patent covers a lock similar to that covered by the '832 patent, but with a sealing cover affixed to the outside of the locking head. Issues relating to infringement and validity of the '832 patent were disposed of before trial.

      This matter was tried to a jury over nine days beginning on March 2, 2009. At the close

of evidence, the Court granted Wyers's motions for judgment as a matter of law on their infringement claims.  The question of obviousness of the remaining disputed claims—claims 15, 19, 21, and 24 of the '115 patent; claim 1 of the '426 patent; and claims 1, 9, and 11 of the '649 patent—was submitted to the jury.  The jury found Master Lock failed to show the claims were obvious by clear and convincing evidence and awarded Wyers $5.35 million in damages as a reasonable royalty.  The jury's verdict of nonobviousness is now upheld by this Court.

This case is now before me on Master Lock's Motion for Remittitur, or in the Alternative, for a New Trial on the Issue of Damages [**Docket # 292**] and supporting Brief [**Docket # 293**]; Wyers's Response [**Docket # 306**]; and Master Lock's Reply [**Docket # 317**].  Oral argument would not materially assist the determination of this motion.  After consideration of the motion, the papers, and the case file, and for the reasons stated below, I DENY Master Lock's Motion for Remittitur, or in the Alternative, for a New Trial on the Issue of Damages [**Docket # 292**].

## I.  STANDARD OF REVIEW

When considering a motion for remittitur or a new trial on damages, a district court in a patent case will apply the law of the regional circuit where the appeal from the district court would normally lie.  *See Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1380 (Fed. Cir. 2005).  Master Lock bears "the heavy burden of demonstrating the verdict was 'clearly, decidedly, or overwhelmingly against the weight of the evidence.'"  *See Blank v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998) (citations omitted); *see also Unisplay, S.A. v. American Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995) ("When a party files a motion to amend the judgment or in the alternative to grant a new trial on the amount of damages

awarded by a jury, the trial court determines whether the jury's verdict is against the clear or great weight of the evidence."). So long as the jury's damages verdict is within the range of reasonable possible verdicts supported by the evidence, the damages verdict should stand. *See United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1228 (10th Cir. 2000); *Midwest Underground Storage, Inc. v. Porter*, 717 F.2d 493, 501–02 (10th Cir. 1983).

## II.  ANALYSIS

Prior to trial, the question of damages was limited to a "reasonable royalty" as described in 35 U.S.C. § 284 and further defined in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120–23 (S.D.N.Y. 1970). Section 284 "contemplates that when a patentee is unable to prove entitlement to lost profits or an established royalty rate, it is entitled to 'reasonable royalty' damages based upon a hypothetical negotiation between the patentee and the infringer when the infringement began." *Unisplay*, 69 F.3d at 517. Although the inquiry "necessarily involves an element of approximation and uncertainty," a jury's determination of a reasonable royalty "must be supported by relevant evidence in the record." *Id*.

The jury found $5.35 million to be a reasonable royalty. As both parties acknowledge, this amount appears to have been reached by awarding Wyers approximately half of the profits they would have received had Master Lock sold the offending locks under the private label agreement they formerly had with Wyers. But the $5.35 million royalty calculation was supported by substantial evidence including: Wyers's testimony regarding his prior contentious relationship with Master Lock, his reluctance to license the patents because he felt the protected technology was more valuable for purposes of launching and promoting his own company, his company's ability to meet the market demand for these products and his expected profit margin

of 60 to 61 percent if he sold the products himself, the lack of non-infringing alternatives to the patented technologies, and the competitive advantage Master Lock held in light of its greater size and broader name recognition; documentary evidence showing Master Lock's profits from selling the accused devices were $10.4 million; evidence showing the commercial success and popularity of the accused devices and the high profit margins associated with them; Master Lock's reliance on the sleeve and the external seal in their marketing materials; evidence showing Master Lock chose not to pursue non-infringing alternatives despite its claim that the non-infringing alternatives would have been less expensive to produce; evidence showing the convertible shank benefitted both end users and retailers and the flat flange seal benefitted end users; and evidence showing nearly every hitch pin lock sold by Master Lock infringed at least one of the three patents at issue. Applied to the *Georgia-Pacific* factors and other factors related to the reasonable royalty inquiry—as described in Jury Instruction 14—this substantial evidence was sufficient to support the jury's verdict. *See United Phosphorous*, 205 F.3d at 1228; *Unisplay*, 69 F.3d at 517.

Master Lock argues the jury should have accepted its theory that the royalty be limited to the four percent royalty negotiated between Wyers and Master Lock in regard to the '832 patent—and, according to Master Lock, offered as a similar royalty by Wyers on the '115, '426, and '649 patents. Master Lock argues Mr. Wyers's testimony that he did not offer to license the patents for a four percent royalty and that he did not want to enter into such an arrangement is "not credible." Such a determination is not for this Court to make, however, as questions of credibility are uniquely the province of the jury. Moreover, the evidence presented at trial was sufficient to show the inventions claimed in the '115, '426, and '649 patents were more valuable

than the internal seal claimed in the '832 patent.  Accordingly, the jury was free to conclude the '832 patent was not "comparable to the '115, '426, and '649 patents" for purposes of calculating a reasonable royalty.  *See* Jury Instruction 14.

Master Lock next argues $5.35 million—which represented 24% of Master Lock's proceeds from the sales of the infringing locks—exceeds its profit margin of 15%.  At trial, however, Wyers presented evidence showing Master Lock's profits were closer to 60%—a number similar to Wyers's own profits.  As shown by the $5.35 million amount, the jury implicitly found the actual profit margin to be higher than the 15% claimed by Master Lock.  The jury was not obligated to believe Master Lock's expert any more that it was obligated to believe Mr. Wyers.  It would be inappropriate, therefore, to override the jury's verdict based on such a credibility question.  The jury could reasonably conclude hypothetical parties in the position of Wyers and Master Lock would negotiate a royalty of 24% in light of an anticipated 60% profit margin.  *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1539, 1555 (Fed. Cir. 1995) (holding it was "not unreasonable for the district court to find that an unwilling patentee would only license for one-half of its expected lost profits and that such an amount was a reasonable royalty").            Master Lock further argues that the jury failed to discount the value of the non-patented features of the accused locks.  As noted by Wyers, however, Federal Circuit authority holds that—for purposes of calculating a reasonable royalty—a patentee may recover a royalty based on the value of the entire infringing apparatus so long as the patented feature provides the basis for consumer demand.  *See Rite-Hite*, 56 F.3d at 1549.  Evidence presented at trial—including Master Lock's marketing materials, product packaging, and sales figures, as well as Mr. Wyers's testimony—showed the sleeve and external seal drove the market demand

for the hitch pin locks Master Lock sold.  Although Master Lock presented testimony suggesting that customer service, quality, and brand recognition were more important to driving sales than the claimed inventions, the jury was not obligated to find this testimony persuasive over the documentary evidence or Mr. Wyers's testimony.

Finally, Master Lock argues the existence of non-infringing substitutes must cap the reasonable royalty award because no potential licensee in a hypothetical negotiation would agree to pay a royalty in excess of the cost of switching to a non-infringing alternative.  By finding the reasonable royalty to be 24%, however, the jury implicitly found Master Lock's proffered solution—which consisted of packaging two pins of varying sizes in one package—not to be a "non-infringing substitute."  The existence of non-infringing substitutes is a question of fact, reviewable under the clearly erroneous standard.  *Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1577 (Fed. Cir. 1992).  In light of the obvious differences between the claimed invention and Master Lock's proffered solution—particularly when coupled with Master Lock's decision not to sell the alleged "non-infringing substitute" despite believing selling two shanks in one package would be cheaper than selling a sleeved shank—I find no such error here.

### III.  CONCLUSION

"A district court is not limited to selecting one or the other of the specific royalty figures urged by counsel as reasonable."  *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1168 (Fed. Cir. 1991).  Unless the Court is convinced that the jury "clearly erred in the inference it drew from all the evidence," the jury's verdict in regard to reasonable royalty "must be affirmed as reasonable."  *See id.*  Upon review of the evidence presented at trial, I am

not persuaded that the $5.35 million figure "is, in view of all the evidence, either so outrageously high or so outrageously low as to be unsupportable as an estimation of reasonable royalty." *See Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990). Accordingly, Master Lock's Motion for Remittitur, or in the Alternative, for a New Trial on the Issue of Damages [**Docket # 292**] is DENIED.

Dated: May     12    , 2009.

                                                     BY THE COURT:

                                                    s/Lewis T. Babcock
                                                    Lewis T. Babcock, Judge